**Gus BENNETT, Sr., Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellee.**

No. 90–3704.

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1992.

Nils R. Douglas, New Orleans, La., for plaintiff-appellant.

Michael K. Fitzpatrick, Nancy Cromartie, Porteous, Hainkel, Johnson & Sarpy, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, JONES, Circuit Judge, and PARKER, District Judge.[1]

EDITH H. JONES, Circuit Judge:

Plaintiff-appellant Gus Bennett, Sr. sued Allstate Insurance Company to recover under a fire insurance policy after his house was destroyed by fire. The district court entered a judgment voiding the entire poli-

---

1. District Judge of the Eastern District of Texas, sitting by designation.

cy for contents fraud. Finding no reversible error, we affirm.

## I.

On January 17, 1987, at approximately noon, plaintiff's home burned. The fire had five different points of origin and has been classified by the New Orleans Fire Department as arson. Approximately thirty-six hours later, the house burned again. The second fire also had five separate points of origin and was classified as arson.

After reviewing the property loss worksheets submitted by Bennett, Allstate had him sign a non-waiver agreement and continued to investigate the claim. Allstate repeatedly requested a sworn statement in proof of loss, but Bennett did not provide it until December 1987.[2] Allstate's investigation then revealed that many of the items listed on Bennett's sworn proof of loss were not in his possession, their ages were understated, and their values were overstated. Allstate resisted Bennett's claim and alleged arson and contents fraud as an affirmative defense against coverage.

The parties' first trial ended in a mistrial. After a second, eight-day trial, the district court, on a jury finding of contents fraud, voided the entire policy. This appeal followed.

## II.

Bennett's most significant contention is that the district court erred in concluding as a matter of law that contents fraud voids the entire policy. Plaintiff relies on LSA–R.S. 22:692.1, which provides:

Assertion of a defense of material misrepresentation made by an insured subsequent to loss by fire as to the value of the contents of a residence or business shall not entitle an insurer to void total coverage of the policy based on such misrepresentation, unless a court of competent jurisdiction determines and adjudicates otherwise.

Plainly, however, the statute does not support Bennett's argument that contents fraud may *never* void a fire insurance policy; the provision states that material misrepresentation of the contents will not void the policy *unless* a court of competent jurisdiction so declares. What this last clause means is the proper focus of discussion.

LSA–R.S. 22:692.1 operates as an exception to LSA–R.S. 22:691, a standard set of terms incorporated into all fire insurance policies issued in the state of Louisiana. *See* LSA–R.S. 22:691(A). The standard fire policy provides that contents fraud or material misrepresentation voids the entire policy. LSA–R.S. 22:691(F)(2). LSA–R.S. 22:692.1 was enacted to give the insured his day in court and to prevent him from being dismissed on summary judgment. HOUSE COMM. ON COMMERCE MINUTES, 1985 Regular Session of the State of Louisiana, HOUSE BILL 1610. It allows the court to reduce the loss claimed by policyholders without sacrificing all of their coverage. *Id.* The House Minutes do not suggest, contrary to the statutory language, that as a matter of law contents fraud or material misrepresentation will never cause the entire policy to be void.[3]

---

2. Plaintiff was required by the contract of insurance to provide a sworn statement in proof of loss to the insurance company as a prerequisite to recovering on his claim. The sworn statement was necessary to determine the actual cash value of the loss claimed by plaintiff. Once the statement was provided, any discrepancy between plaintiff's and defendant's valuations would be cured by an independent appraisal of the loss.

3. Prior to the enactment of LSA–R.S. 22:692.1 in 1985, Louisiana law enforced the contractual defense of fraud by stating that deliberate and material misrepresentation, made with intent to deceive the insurer, would void the entire poli-

cy. *See* LSA–R.S. 22:691; *Mamco, Inc. v. American Employers Insurance Co.,* 736 F.2d 187 (5th Cir.1984); *Breeland v. Security Insurance Co. of New Haven, Connecticut,* 421 F.2d 918 (5th Cir. 1969); *Sims v. Equitable Fire & Marine Insurance Co.,* 170 So.2d 163 (La.App.1964). LSA–R.S. 22:692.1 was enacted to give the insured his day in court and the opportunity to prove the value placed on the destroyed insured items. *See* HOUSE COMM. ON COMMERCE MINUTES, 1985 Regular Session of the State of Louisiana, HOUSE BILL 1610. It is not clear that this statute was intended to change the rule enunciated in *Mamco.* If anything, it appears to codify *Mamco.*

The statute, illumined by this legislative history, appears to contemplate a three-step process: (1) a finding of material misrepresentation with regard to the loss of contents; (2) a finding that the misrepresentation was intentional and for the purpose of deceiving the insurer; and (3) a determination by "a court of competent jurisdiction" that the entire policy should be avoided.

■ Unfortunately, Bennett misspent his energy contending in the trial court that contents fraud could never void a fire policy under this statute. Objections that are not well-taken legally do not preserve any error for review on appeal. Fed.R.Civ.P. 51; *Pierce v. Ramsey Winch Co.*, 753 F.2d 416 (5th Cir.1985). He never requested the court to submit to the jury the issue of whether, if they found material misrepresentation, such misrepresentation should void the entire policy.

The court instructed the jury as follows:

Therefore, ladies and gentlemen, under the terms of the policy itself, material misrepresentations in a proof of loss given to the fire insurer will void coverage. A misrepresentation is material if done knowingly and intentionally and with the intent to deceive the insurer.

However, inadvertent overestimates by the insured of the value of his property is not sufficient to void the policy. Nor is a mere misstatement of the loss, made in good faith, even though erroneous.

Therefore, in order to prevail on this defense, Allstate must establish by a preponderance of the evidence that Gus Bennett, Sr. overestimated the value of his house or listed property that was not even located in his house at the time of the fire or overvalue of the contents that were in the house and that he intentionally made such statements, knowing they were false, with the intent to deceive and defraud Allstate into paying the amounts requested.

Direct evidence of intent to deceive is rare. Such intent, therefore, must often be inferred from circumstances that create a reasonable assumption that the claimant was aware of the falsity of his representations.

If you find that Mr. Bennett made representations to the Defendants that were false and were material to the claim, and he knew them to be false, it is presumed that he intended to defraud the company.

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or an inconvenience to the other.

Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence.

Fraud will never be presumed, however, from acts which may be accounted for on the basis of honesty and good faith.

If you find from the evidence that Mr. Bennett caused his home to be burned, he cannot recover any money from Allstate.

In addition, if you find that Mr. Bennett knowingly made material misrepresentations in his proof of loss claim or on his work loss sheet, with the intent to deceive Allstate, he cannot recover.

However, if you find that Mr. Bennett did not cause his home to be burned and that although he made errors or misrepresentations in his proof of loss, those misrepresentations were not made with knowledge and with the intent to defraud the insurance company, then Mr. Bennett can recover. In this regard, ladies and gentlemen, it will be up to you the jury to determine the amount Mr. Bennett should recover for contents that were destroyed by the fire.

(ROA Vol. 12, 1640–1643).

Because Bennett did not make a proper objection to the charge as given, we are confined to reviewing the jury charge for plain error. *Pierce, supra.* No plain error appears in the trial court proceedings. The court did not receive much help from either party in interpreting LSA–RS. 22:692.1, as insured and insurer were highly antagonistic to each other, and each invoked the most extreme interpretation of the statute

in his or its favor. There was no plain error in the court's instructions.

■ The court treated Allstate's contents fraud assertion as an affirmative defense, which it is, and accordingly placed the burden of proof upon Allstate. The jury were then asked to find whether Bennett materially misrepresented the contents of his home. Material misrepresentation, in turn, was properly defined as embodying both materiality and intentional deception. The jury were guided well enough toward their decision, such that no plain error exists in the charge.

The next question, which we also regard as falling within the realm of an instructional error, is whether because of the jury finding of material misrepresentation, the policy could be or should have been voided. Bennett argues that the trial court misunderstood her responsibility for this ultimate determination. The most likely meaning of the statute based on its wording and history is that when "a court of competent jurisdiction" finds an insured has made a material misrepresentation as to the value of dwelling content lost by fire, that court must determine whether the misrepresentation voids total coverage or only the contents misrepresented. The statute furnishes no help as to the criteria for such a decision or whether the judge or jury should make it. Bennett's singleminded pursuit of the policy-is-never-voided approach did not preserve his right to have the trial court instruct the jury on such criteria nor did he preserve the right to have the jury rather than the court make this determination. *See* Fed.R.Civ.P. 49(a). The factual support for our decision is stated in the next section.

### III.

■ Bennett's second contention is that there is a complete absence of probative evidence of contents fraud. Plaintiff complains that there was no evidence of overvaluation, but overvaluation is not the only criterion. The evidence was overwhelming

that at least 31 items on Bennett's sworn contents list of 146 were shown to have been removed from the home. Bennett's ex-wife and his children testified that they removed these items as they departed from Bennett's household, in some cases, many years ago. Moreover, a number of the items were, by family members' testimony and by proof from old family photos, much older than Bennett claimed. Further, Bennett claimed that these items originally cost over $6,000, as compared to a claimed $29,000 total original cost of all the contents of his home. This disparity would constitute a material misrepresentation.[4] *Mamco, Inc. v. American Employers Ins. Co.,* 736 F.2d 187, 190 n. 6 (5th Cir.1984) (" 'materiality' simply embodies the understanding that the misrepresentation concerns a fact that significantly affects the rights and obligations of the insurer."). Also, Allstate made a sufficient showing that the items had been removed from the home, but Bennett did not show that the items had been replaced.

Not only must material misrepresentation be shown, but the misrepresentation must be made with the intent to deceive. "Such intent ... must often be inferred from circumstances that create a reasonable assumption that the claimant was aware of the falsity of his representation." *Mamco,* 736 F.2d at 190. Here, there was specific testimony that 31 of the listed items had been removed from Bennett's home. Not only this, but the police, firemen and neighbors who first entered the premises after the fire testified that it looked as if the home were vacant or abandoned, due to the sparse contents. A review of the record as a whole fully supports the jury finding that plaintiff intended to deceive the insurance company by overstating the contents of the home.

■ On appeal from the denial of plaintiff's motions for directed verdict or judgment notwithstanding the verdict, this court applies the same standard as the

---

**4.** As the trial judge noted, "Certainly the evidence has been that there has been material     misrepresentation ..."

district court. All evidence is reviewed in light most favorable to the party opposed to the motion.

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). As stated above, the evidence was overwhelmingly opposed to Bennett and the case was properly sent to the jury. Even if we view the evidence in the light most favorable to the movant, the motions fail. The incriminating character of the evidence also convinces us that even if LSA–R.S. 22:692.1 contemplated that a court may refuse to void a fire policy for contents fraud despite some level of material misrepresentation, the court's judgment voiding Bennett's policy is not plain error.

### IV.

Bennett's third contention is that photographs taken by George Hero, a fire cause and origin expert, should not have been admitted and that he should not have been allowed to testify on rebuttal as to the contents that Bennett asserted were in the attic. Appellant objected to the photographs on the grounds that Hero did not have a ladder. Hero testified, however, that he pulled himself into the attic from his position on top of a dresser. The photos were properly documented and admitted into evidence. Bennett also quarrels with the admission of photos of the fuse box. Those photos are immaterial here because Bennett won on the arson defense. As to Hero's rebuttal testimony, the admission of evidence is within the discretion of the trial court and is reviewed for abuse of discretion. *Farace v. Independent Fire Ins. Co.,* 699 F.2d 204, 209 (5th Cir.1983). Bennett testified for the first time, on cross-examination, that he moved items into the attic because he was remodeling. Hero was the only person to view the attic and was the best situated witness to testify about the contents of the attic. Also, the photos of the attic were already admitted into evidence. Admission of Hero's rebuttal testimony was clearly within the district court's discretion.

### V.

Bennett finally asserts that Allstate should be estopped from or has otherwise waived its contents fraud defense because once the insurer had determined that it would deny the claim, the sworn statement in proof of loss should not have been obtained and used against the insured at trial. Under Louisiana law, the sending or receiving of forms for proof of loss, or the investigation of any claim or loss under a policy, does not constitute a waiver of any provision of the policy or of any defense available to the insurer. LSA–R.S. 22:651. Although in some circumstances waiver or estoppel may be appropriate, such theories are not available here.

Allstate cannot be said to have waived its rights. "Waiver is usually defined as the intentional relinquishment of a known power or privilege." *Tate v. Charles Aguillard Ins. & Real Estate, Inc.,* 508 So.2d 1371, 1373 (La.1987) (citations omitted). Thus, for a waiver to have occurred, there must have been "an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Id.* at 1374 (citations omitted). The record is void of any evidence of waiver.

Allstate continually requested the sworn statement in proof of loss to determine the exact loss Bennett was claiming. Bennett signed a non-waiver agreement, and all of the documents provided to him contained a non-waiver provision. Although Bennett was examined under oath about the contents of his home, and an independent investigator examined plaintiff's claim, Allstate could not have known the exact nature of Bennett's loss claim until the sworn statement in proof of loss was provided

some seven months later.[5] There has been no waiver.

Also, the insured was required by the contract of insurance to submit the sworn statement in proof of loss in order for the insurance company to determine whether to deny the claim or approve the actual cash value set by the insured.[6]

 As for Bennett's claim of detrimental reliance, there were no representations by the defendant on which the plaintiff could rely. "The essential elements to state a detrimental reliance theory of recovery in Louisiana are: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance." *Breaux v. Schlumberger Offshore Services,* 817 F.2d 1226, 1230 (5th Cir.1987), *aff'd* 836 F.2d 1481 (1988). Allstate never represented that it was relinquishing its claims or defenses. Throughout the investigation process, plaintiff was reminded that defendant was not waiving any of its rights or defenses. Second, even if there were representations on which plaintiff relied, there was no reasonable reliance on those to induce plaintiff to submit a fraudulent sworn statement in proof of loss. These facts also belie appellants' theory of estoppel. Bennett's final contentions must also fail.[7]

## VI.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**5.** *See supra,* note 2.

**6.** Bennett argues that Allstate knew it was going to deny the claim and therefore he was under no duty to furnish the sworn statement in proof of loss and that the statement furnished should not be used against him. He relies on the following:

It is well settled by the jurisprudence of this State that when an insurance company denies liability for a claim under an insurance policy, it abandons its rights to compel the claimant to comply with the preliminary provisions of the policy regarding the furnishing of proof of loss.

*Robicheaux v. Calvert Fire Insurance Co.,* 171 So.2d 264, 268 (La.App. 1st Cir.1965). This argument is flawed because Allstate did not deny the claim. Instead Allstate was investigating the arson claim, and could not deny the contents claim until the sworn statement in proof of loss showing the actual cash value of the contents was provided to it. *See supra,* note 2.

**7.** Even if the sworn statement in proof of loss should not have been admitted into evidence, any error committed was harmless. In his petition, plaintiff continued to claim the same amount of contents losses as he did in the sworn statement. Plaintiff's fraudulent conduct should not be rewarded.