**FARM CREDIT BANK OF TEXAS**

v.

**FIREMAN'S FUND INSURANCE COMPANY, et al.**

Civ. A. No. 91–2230.

United States District Court,
W.D. Louisiana,
Monroe Division.

April 26, 1993.

Ruling Denying Reconsideration
May 25, 1993.

---

Ralph D. McBride, Bruce D. Oakley, Lisa G. Zummo, Eileen K. Wilson, Richard D. Sanders, Bracewell & Patterson, Houston, TX, Jean Marie Sweeney, J. Timothy Betbeze, Ann C. Dowling, William C. Gambel, Veronica L. Odinet, Milling Benson Woodward Hillyer Pierson & Miller, New Orleans, LA, for Farm Credit Bank of Texas.

Matt J. Farley, Charles F. Seemann, Jr., Duris L. Holmes, Deutsch Kerrigan & Stiles, New Orleans, LA, George C. Reid, Lindsey L. Cook, Phillips Hinchey & Reid, Atlanta, GA, for Fireman's Fund Ins.

H. Bruce Shreves, Susan B. Kohn, Judy Perry Martinez, Simon Peragine Smith & Redfearn, New Orleans, LA, for Commercial Union Ins. Co.

Brian Allen Homza, F. Drake Lee, Jr., Cook Yancey King & Galloway, Shreveport, LA, for Aetna Cas. & Sur. Co.

Ray C. Dawson, Mark D. Mese, Franklin Moore & Walsh, Baton Rouge, LA, for Federal Ins. Co.

F. Drake Lee, Jr., Cook Yancey et al., Shreveport, LA, for Reliance Ins. Co.

Thomas Davenport, Jr., Davenport Files & Kelly, Monroe, LA, William J. Hamlin, Walker Bordelon Hamlin Theriot & Hardy, New Orleans, LA, Patrick S. Brady, Ginsberg Stanich & Dufford, Phillip H. Ginsberg, Steven D. Brown, Stokes Eitelbach & Lawrence, Seattle, WA, for Marsh & McLennan, Inc.

## RULING

LITTLE, District Judge.

This suit is but one tributary in the torrent of litigation precipitated by one loan made by

the Federal Land Bank of Jackson (FLBJ) in 1983. In July 1983, on the recommendation of Lawrence Bingham (President of the Federal Land Bank Association of Monroe, Louisiana), FLBJ loaned $15 million to T.A. Grant III, James C. Steele III, and Suzanne B. Grant to finance the purchase of 36,000 acres of timber land. The debt was secured by a mortgage on 16,000 acres of the land and certain pledges of stock. Bingham resigned from his position in 1984 and was succeeded by A.J. Burns. When the three borrowers realized that they lacked funds to pay their 1 January 1985 installment, they sought Burns' help. On 31 December 1984, Burns issued (without authority) a standby letter of credit to Ouachita National Bank ("ONB") so that ONB would loan the borrowers the $1.4 million needed to pay the interest portion of the installment. Plaintiff alleges that also on 31 December 1984, Burns agreed in writing to release portions of the collateral securing the $15 million loan so that the borrowers could sell it and use the proceeds to repay the ONB loan before 30 June 1985, the demand date on the letter of credit. Burns then recommended to FLBJ that the principal portion of the installment be reamortized but did not disclose the ONB loan or the letter of credit. From 22 January 1985 to 30 July 1985, six partial releases of collateral were executed by Burns and other officers. On 26 June 1985, Burns disclosed to FLBJ the letter of credit. The borrowers failed to repay the ONB loan before 30 June 1985, and thus ONB made demand on the letter of credit. FLBJ honored the letter of credit and took a $1.5 million promissory note from the borrowers to evidence this additional indebtedness. Burns' employment was terminated on 1 August 1985. The borrowers failed to pay the January 1986 installment when it became due, and FLBJ sent notice threatening foreclosure. One month later, the borrowers filed suit in Louisiana state court seeking an injunction against foreclosure, damages, and an order compelling FLBJ to abide by its agreement to release portions of the collateral. The borrowers' claims centered around their allegation that FLBJ refused to release collateral as it had previously agreed. FLBJ filed reconventional demand for foreclosure. In May 1988, Farm Credit Administration appointed REW Enterprises, Inc. ("REW")

as receiver for FLBJ. The trial court denied REW's motion for summary judgment, but the court of appeal, extending *D'Oench* protection to REW, reversed and remanded for entry of judgment in favor of the defendants. *See Grant v. Federal Land Bank,* 559 So.2d 148 (La.Ct.App.2d Cir.), *writs denied,* 563 So.2d 886 and 563 So.2d 887 (La.1990), *cert. denied,* 498 U.S. 922, 111 S.Ct. 301, 112 L.Ed.2d 254 (1990). In February 1989, Burns was indicted for and pleaded guilty to issuing the letter of credit without authority in violation of 18 U.S.C. § 1014. Bingham was indicted for falsifying a loan application (18 U.S.C. § 1018) and misapplying bank funds (18 U.S.C. § 657), but was later acquitted after a jury trial. In June 1990, REW conveyed its interest in the notes and collateral to Farm Credit Bank of Texas ("FCBT"). On 13 July 1990, the trial court recognized the mortgages and entered judgment in favor of FCBT for approximately $31 million. The Court of Appeal dismissed plaintiff's appeals on 25 September 1991. *See Grant v. Federal Land Bank,* 586 So.2d 685 (La.Ct.App.2d Cir.1991). On 26 February 1992, in execution of the judgment, FCBT had the mortgaged property seized and sold at public auction, where FCBT purchased it.

Plaintiff, the FCBT, now brings this suit against five bonding companies (Fireman's Fund Insurance Company, Commercial Union Insurance Company, Aetna Casualty & Surety Company, Federal Insurance Company, and Reliance Insurance Company) and against Marsh & McLennan, Inc., seeking declaratory judgment on bond coverage for losses allegedly caused by the dishonest acts of Bingham and Burns. On 2 December 1992, this court granted summary judgment in favor of Commercial Union. Finding that plaintiff knew of the potential loss in March 1986, we concluded that FCBT's suit, filed in March 1991, was time-barred by the one-year period provided in the Commercial Union bond.

Currently before the court are three motions relating to the Fireman's Fund bond: (1) motion for summary judgment by Fireman's Fund on grounds that plaintiff's claims under the fidelity provision in the bond is

time-barred by the bond's prescriptive provision; (2) plaintiff's motion to strike certain exhibits in support of Fireman's Fund motion for summary judgment; and (3) plaintiff's motion for partial summary judgment declaring Fireman's Fund liable for indemnification of attorney fees and litigation costs incurred in defending the lender liability suit brought by the borrowers in February 1986. We address Fireman's Fund's motion first.

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. In our analysis, we view the facts and inferences from the evidence in the light most favorable to the nonmoving party. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.), *reh'g denied,* 920 F.2d 259 (5th Cir.1990). Before we can find that no genuine issues of material fact exist, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party. *Id.* The nonmoving party may not depend solely on denials contained in the pleadings, but must submit specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *reh'g denied,* 961 F.2d 215 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Mere conclusory rebuttals by the nonmoving party will not defeat a motion for summary judgment. *Topalian,* 954 F.2d at 1131.

The bond issued by Fireman's Fund provides two types of coverage pertinent to the case at hand: (1) fidelity coverage for direct financial losses sustained through dishonest or fraudulent acts of employees; and (2) indemnification of court costs and attorney fees incurred in defending against claims brought against the insured that, if established, would constitute a collectible loss under another bond provision (*e.g.,* the fidelity provision). Fireman's Fund's motion pertains to the former.

■ It is undisputed that under the express language contained in the bond, any action to recover under the fidelity provisions of the bond is time-barred if not brought within twenty-four months after discovery of the loss. We have already determined in our 2 December 1992 ruling that the loss at issue was discovered by March 1986. Plaintiff did not file suit until five years later, in March 1991. Thus, Fireman's Fund argues, and we agree, that plaintiff's suit is prescribed under the plain language of the bond.

■ Plaintiff counters that Fireman's Fund has waived the time limitation by engaging in a course of misleading conduct. We disagree. The Louisiana Supreme Court has defined waiver as the "intentional relinquishment of a known power or privilege." *Tate v. Charles Aguillard Ins. & Real Estate, Inc.,* 508 So.2d 1371, 1373 (La.1987). Because it is plaintiff who seeks performance under the bond, the burden of proving waiver falls on the plaintiff. *Id.* at 1375. To find that an insurer has waived a policy provision, there must be " 'an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.' " *Bennett v. Allstate Ins. Co.,* 950 F.2d 1102, 1107 (5th Cir.1992) (quoting *Tate,* 508 So.2d at 1374). Thus, the determinative question is whether the actions of Fireman's Fund "led plaintiff to reasonably believe the insurer would not require compliance with the policy provision." *Blum v. Cherokee Ins. Co.,* 336 So.2d 894, 897 (La.Ct. App. 4th Cir.1976) (Lemmon, J.). Applying this standard, we find no waiver.

■ As evidence of waiver, plaintiff points to four actions taken by Fireman's Fund: (1) a letter dated 28 October 1986 from a Fireman's Fund employee to Marsh & McLennan acknowledging notification of a potential claim and requesting any update on the matter; (2) notes regarding a 2 February 1987 telephone call from a Fireman's Fund employee to plaintiff requesting additional information; (3) a letter of 20 June 1988 acknowledging receipt of a status report from plaintiff; and (4) internal memoranda between Fireman's Fund personnel in 1987 discussing the plaintiff's potential claim. None of these acts are inconsistent with an intent to enforce the prescriptive provision contained in the bond. The telephone con-

versation and letters amount to nothing more than acknowledgements of receipt of information and investigative inquiries. Under section 22:651 of Louisiana's Revised Statutes, such acts by an insurer cannot constitute waiver of a policy provision. La.Rev. Stat.Ann. § 22:651 (West 1978). The internal memoranda also contain nothing inconsistent with enforcing the time limitation on filing suit. And even if they did, they could not form the basis of waiver because they were never communicated to the plaintiff and thus could not have induced complacency.

■ Plaintiff seems to argue that by not sending plaintiff a statement reserving its rights under the bond and by not commenting upon plaintiff's failure to file proof of loss until 1989, Fireman's Fund waived its right to enforce the two-year prescriptive period. This argument cannot prevail. Although it is conceivable that an insurer's silence could amount waiver under some circumstances, here it does not. No reason existed for Fireman's Fund to reiterate its allegiance to the bond's prescriptive period, for it had done nothing to indicate a willingness to deviate from it. At the time, plaintiff had notified Fireman's Fund only of a potential claim with regard to which it had realized no loss. Fireman's Fund's silence in this regard was not misleading under the circumstances. At worst, Fireman's Fund's comments regarding proof of loss were mildly ambiguous. No amount of contortion can twist them into waiver of the two-year limitation on filing suit.

Consequently, we find that plaintiff has failed to present a genuine issue as to prescription. Fireman's Fund is therefore entitled to judgment in its favor as a matter of law with regard to plaintiff's claims under the fidelity provision of the bond. Because Fireman's Fund right to judgment is established by the bond alone, we were not required to rely upon those exhibits challenged by the plaintiff for lack of proper authentica-

tion. Plaintiff's motion to strike exhibits is therefore moot.

■ We now turn to plaintiff's motion for partial summary judgment declaring Fireman's Fund liable under the cost-of-defense provision found in General Agreement A of the bond. The two-year prescriptive period discussed above does not apply to claims under General Agreement A until a final judgment is rendered in the third-party proceeding. Plaintiff seeks summary judgment declaring coverage under this provision for attorney fees and costs incurred in defending the suit brought against FLBJ by the Grant-Steele borrowers in February 1986.

The cost-of-defense provision found in General Agreement A of the bond provides for indemnification of court costs and attorney fees incurred by the insured in defending against claims asserting liability that, if established, would constitute a collectible loss under the bond's other provisions. In other words, for plaintiff to be entitled to cost-of-defense coverage, the borrowers' claims against FLBJ must have been such that if FLBJ had been unsuccessful in defending against them, the judgment against FLBJ (or its successor in interest) would have been a collectible loss under the bond. Here, the only potentially relevant loss provision would be the fidelity provision found in Insuring Agreement A, which provides coverage for direct financial losses sustained through dishonest or fraudulent acts of the insured's employees.[1] This provision limits "dishonest or fraudulent acts" to those committed by an employee with the manifest intent to cause a loss to the insured and to obtain financial benefit for himself or others.[2] Thus, in this case, cost-of-defense coverage is triggered only if the suit brought by the borrowers resulted from an act that satisfies this definition.

Fireman's Fund contends that this condition is met only if the third party alleged such an act in its claim against the insured.

---

1. General Agreement A would also apply to claims triggering the forgery provision contained in Insuring Agreement D. The provision limits "forgery" to signing the name of another. Because plaintiff does not allege that any of its employees committed such an act, the forgery provision is inapplicable here.

2. The definition also includes knowingly altering, concealing, or omitting material information in a loan application.

Since the borrowers did not allege any acts of dishonesty or fraud, Fireman's Fund argues that their suit could not have activated the cost-of-defense provision. The borrowers alleged breach of a valid, written agreement to release collateral; it is plaintiff (the insured) who now claims that the suit was grounded upon fraudulent or dishonest acts of one of its employees. According to Fireman's Fund, this is not enough—the potential coverage must appear on the face of the complaint against the insured.

Several courts have applied this "pleadings only" rule in interpreting cost-of-defense provisions as well as duty-to-defend clauses. *See, e.g., Red Lake County State Bank v. Employer's Ins. of Wausau,* 874 F.2d 546, 548–550 (8th Cir.1989). In *First Nat'l Bank v. Fidelity & Casualty Co.,* 634 F.2d 1000, 1004 (5th Cir.1981), a Texas diversity case, the Fifth Circuit implicitly applied the rule to a cost-of-defense provision similar to the one at issue here, stating that the "determinative factor is whether facts *alleged in the complaint* would, if proven, establish a claim indemnified by a loss clause of the Bond." *Id.* (emphasis added). And in *Continental Sav. Ass'n v. United States Fidelity & Guaranty Co.,* 762 F.2d 1239, 1242–44 (5th Cir. 1985), another Texas case, the Fifth Circuit expressly addressed application of the rule, assuming without deciding that Texas courts would extend the rule applied in duty-to-defend cases to a cost-of-defense provision. Like Texas courts, Louisiana courts apply a liberal construction of the "pleadings only" rule in determining duty-to-defend coverage.[3] But we have found no Louisiana court applying the rule to cost-of-defense clauses, and we need not decide at this juncture whether they would do so.[4] Even without the rule's application, plaintiff fails to establish that it is entitled to cost-of-defense coverage as a matter of law.

The language of the cost-of-defense provision in General Agreement A clearly requires some causal connection between the third party's claims and an act covered under the fidelity provision. This nexus is easily established where a plaintiff sues the insured claiming fraud or dishonesty on the part of the insured's employee. If the insured loses such a case, it is entitled to indemnification under both the fidelity provision of Insuring Agreement A and the cost-of-defense provision of General Agreement A; if the insured succeeds in its defense and the allegations prove to be unfounded, it is nevertheless entitled to indemnification of costs and attorney fees under General Agreement A. But this is not such a case—the borrowers did not allege fraud or dishonesty on the part of Burns or any employee. Thus, if the conditions of General Agreement A are to be given any meaning (assuming that the "pleadings only" rule does not apply) plaintiff must establish this causal element between the third party's claims against it and an act covered under the fidelity provision. In other words, where as here the third party does not allege a covered act, the insured must establish its right to coverage by offering some proof that: (1) the third party's claims were "on account of" an employee's act, and (2) the act satisfies the requirements of a loss provision—here, the fidelity provision. General Agreement A can be read in no other way. To allow cost-of-defense coverage without such a showing would allow plaintiff to claim coverage for virtually any suit—whether or not it presented a potential collectible loss.

Even with the facts construed in its favor, the plaintiff fails to make the necessary showing. Instead, plaintiff syllogizes: the borrowers' suit resulted from Burns' action; there can be no question that Burns' acts were dishonest because he pleaded guilty to issuing the letter of credit without authority; therefore coverage is established. Not only does this argument require great leaps of logic, but it assumes much that plaintiff has

---

**3.** *See Cute–Togs of New Orleans, Inc. v. Louisiana Health Serv. & Indemn. Co.,* 386 So.2d 87, 88–89 (La.1980); *see also Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203, 205 (5th Cir.1991).

**4.** Since both plaintiff and Fireman's Fund argue Louisiana law on the prescription issue, we assume until shown otherwise that the bond is governed by Louisiana law or by the law of a

state that render the same result. *See Porter v. American Optical Corp.,* 641 F.2d 1128, 1144–45 (5th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), *reh'g denied,* 455 U.S. 1009, 102 S.Ct. 1649, 71 L.Ed.2d 878 (1982). But because we rely today exclusively on the clear language of the bond provisions, choice of law is not determinative to this ruling.

yet to establish. Even if issuing the letter of credit was a "dishonest act" (and we are not convinced that it satisfies the bond definition), it did not give rise to the borrowers' suit. Any connection between the letter of credit and the borrowers' suit is far too tenuous to trigger General Agreement A.

The only act of Burns at the bottom of the borrowers' claims is his alleged agreement to release collateral. But plaintiff offers no proof that this alleged act meets the dishonesty and fraud definition of the fidelity clause.[5] The transcript of Burns' confession to FLBJ officers establishes that Burns issued the letter of credit and misrepresented data in the application for reamortization, but is bereft of any mention of the alleged agreement, much less Burns' intent in making it. Nor do the releases of collateral from January to July 1985 establish that the alleged agreement meets the requirements of Insuring Agreement A. The affidavits of former FLBJ officers refer ambiguously to a 31 December 1984 agreement, but fail to state anything regarding its substance or Burns' intent in making it. The only piece of evidence offered by plaintiff even suggesting that Burns made such an illegal agreement is a letter from the borrowers to Burns dated 31 December 1984, stating that they agreed to sell land and timber for $1.4 million and give the proceeds to FLBJ. This proves nothing on Burns' part.

In short, plaintiff fails to establish that if the borrowers had won their suit, the judgment would have constituted a collectible loss under the fidelity provision. Consequently, we find that genuine issues remain as to cost-of-defense coverage under the bond.

For these reasons, Fireman's Fund's motion for summary judgment is GRANTED, and plaintiff's motion to strike exhibits is moot. Plaintiff's motion for summary judgment is DENIED.

## RULING ON RECONSIDERATION

On 26 April 1993, this court granted summary judgment in favor of defendant Fireman's Fund. We found that suit under the fidelity provisions of the bond was time-barred by the two-year limitation period provided in the bond. We rejected plaintiff's argument that Fireman's Fund had waived this limitation period. In the same ruling, we denied plaintiff's cross motion for summary judgment because genuine issues of fact remained as to Fireman's Fund liability under the bond's cost-of-defense provision. Plaintiff now seeks reconsideration of the ruling on three grounds, none of which warrants reopening these matters.

Plaintiff first argues that reconsideration of the prescription issue is necessary in light of the Fifth Circuit's decision in *Federal Deposit Insurance Corporation v. Bledsoe*, 989 F.2d 805 (5th Cir.1993), rendered four days after our ruling. We disagree. In *Bledsoe*, the issue was whether assignees of the FDIC and FSLIC benefitted from the six-year limitation period of 28 U.S.C. § 2415(a), or whether the state statute of limitations controlled once the cause of action left the agency's hands. The Fifth Circuit reasoned that " 'since an assignee stands in the shoes of his assignor, deriving the same but no greater rights and remedies than the assignor then possessed . . . , the statute of limitations continues to run against the assignee as it had against the assignor before.' " *Id.* (quoting *Fox–Greenwald Sheet Metal Co. v. Markowitz Bros. Inc.*, 452 F.2d 1346, 1357 n. 69 (D.C.Cir.1971)). Thus, the FSLIC's assignee received the remainder of the 2415(a) period. Plaintiff now argues that under *Bledsoe*, the six-year period of 2415(a) controls this case because plaintiff's assignor is REW, an express agent of the Farm Credit Administration (FCA), the federal agency who runs the Farm Credit System (FCS). This argument is ill-founded. Unlike *Bledsoe*, this is not the case of 2415(a) conflicting with a limitation period imposed by another sovereign. This is a case of a bargained-for limitation period in the contract itself. The FCS procured from Fireman's Fund a blan-

---

**5.** In *Hepler v. Fireman's Fund Ins. Co.*, 239 So.2d 669, 677–79 (La.Ct.App. 1st Cir.1970), the court construed a cost-of-defense provision in a fidelity bond much like the one before us. The court emphasized that the insured must establish that the dishonest act giving rise to the suit would be covered under the bond. *Id.* In *Hepler*, even though the employee's act was unauthorized, dishonest, and criminal, the court denied cost-of-defense coverage because the act was not included within the bond's definition of dishonest acts.

ket bond containing a two-year limitation period. In 1988, the FCA appointed REW as receiver for the insolvent FLBJ (an FCS institution), and REW then transferred the cause of action at issue to plaintiff (another FCS institution). Plaintiff's argument is essentially that the FCS and its assignees "can enforce rights under the contract, while at the same time, avoid[ing] conditions imposed by the same writing." *United States v. Republic Ins. Co.*, 775 F.2d 156, 159 (6th Cir. 1985). The fundamental principles of contract tell us that this cannot be so. As the Fifth Circuit observed in *Bledsoe*, an assignee can gain no greater rights under the contract than the assignor possessed. FCS procured the bond from Fireman's Fund; as FCA's agent, REW was bound by its prescriptive provision; and as REW's assignee, plaintiff is also bound. *Bledsoe*'s guidance as to which statute of limitations would apply in absence of this provision is therefore immaterial to our ruling.

■ Plaintiff argues next that newly discovered evidence reveals the place of contract to be California, where the law on waiver is more favorable to plaintiff than Louisiana's. This comes too late. Plaintiff filed this suit in March 1991. But until our 26 April 1993 ruling, plaintiff never mentioned choice of law. In fact, plaintiff argued Louisiana law on the waiver issue. Now, after Louisiana law has yielded an unfavorable result, plaintiff asks for reconsideration on the basis of newly discovered evidence obtained through the deposition of Carolyn Abbott (the Fireman's Fund employee whose signature appears on the face of the bond) taken the day after this court ruled on the matter. Because this evidence was available to plaintiff long before it responded to the summary judgment motion, we find reconsideration unwarranted under Rule 59(e). *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir.1990).

Finally, plaintiff seeks reconsideration of our ruling denying summary judgment on cost-of-defense liability. Plaintiff offers no new evidence or law, but seeks to reargue its position under the "test" set forth in our ruling. There is no new test. The standard for coverage laid out in our ruling came directly from the language of the bond itself. Whenever an insured seeks coverage under an insurance policy or indemnification under a bond, the insured must establish that the loss is a covered one under the terms of the contract. Under the express language of the Fireman's Fund bond, defense costs are covered if the suit is on account of an act covered elsewhere in the bond. We found that plaintiff failed to establish this on summary judgment. Plaintiff offers nothing new today to convince us otherwise.

For these reasons, plaintiff's motion to alter and amend judgment and/or for reconsideration is DENIED.