United States Court of Appeals,
Fifth Circuit.

No. 92-1575.

FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Counter Defendant-Appellant,

v.

Roy William BLEDSOE, Defendant-Counter Claimant-Appellee.

April 30, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG, and JONES, Circuit Judges.

GOLDBERG, Circuit Judge:

The Federal Deposit Insurance Corporation ("FDIC") appeals the district court's grant of summary judgment in favor of Roy William Bledsoe ("Bledsoe"). The lower court held that the FDIC's action to recover payment on a promissory note guaranteed by Bledsoe was barred by the statute of limitations. We reverse.

The Nomadic Note

On May 27, 1983, Galleon Builders, Inc. ("Galleon") executed a promissory note in the principal amount of $392,040.00, payable to State Savings & Loan Association of Lubbock ("State Savings"). On the same date, Bledsoe signed an unconditional guaranty, guaranteeing payment of Galleon's indebtedness to State Savings. The note was due and payable on May 27, 1984.

When the promissory note matured, on May 27, 1984, Galleon defaulted on its obligation to pay State Savings. Soon after Galleon's default, the unpaid note (along with Bledsoe's guaranty of the note) embarked on a long transactional voyage through public and private institutions.

The note's journey began on December 19, 1985, when State Savings was declared insolvent and the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed its receiver. As receiver of State Savings' assets the FSLIC gained possession of the note. However, the note's stay at the FSLIC would last only one night.

The day after FSLIC's appointment as State Savings' receiver, on December 20, 1985, the

FSLIC entered into a purchase and assumption agreement with State Federal Savings and Loan Association of Lubbock ("Federal Savings"), a private institution. Under this agreement, the FSLIC transferred substantially all of State Savings' assets, including the promissory note, to Federal Savings.

Having traveled from State Savings to the FSLIC, and from the FSLIC to Federal Savings, the note did not yet complete its institutional tour. The note made its way back to the FSLIC on August 26, 1988, when Federal Savings was declared insolvent and the FSLIC was once again appointed receiver. On August 9, 1989, while the note still rested with the FSLIC, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). Under FIRREA, Congress abolished the FSLIC and transferred all of the FSLIC's assets to the FDIC.[1] Pursuant to this statutory transfer, on August 9, 1989, the note reached its current location in the hands of the FDIC.

The FDIC, upon receiving the unpaid note, demanded payment from Bledsoe pursuant to Bledsoe's unconditional guaranty. After Bledsoe refused to comply with the FDIC's demand for payment, the FDIC filed this action in United States District Court for the Northern District of Texas on December 18, 1991, seeking recovery from Bledsoe under the terms of the guaranty.

Bledsoe moved for summary judgment, asserting that the FDIC's claim was time barred under the Texas four year statute of limitations. The FDIC responded by arguing that the FDIC's claim was alive under the federal six year statute of limitations. The district court granted Bledsoe's motion for summary judgment. We review the district court's summary judgment determination *de novo. FDIC v. Myers,* 955 F.2d 348, 349 (5th Cir.1992).[2]

---

[1] 12 U.S.C. § 1821a(a)(2)(A).

[2] As a threshold matter, Bledsoe argues that we should affirm the district court's judgment without reaching the merits because the FDIC failed to introduce evidence demonstrating that the note was transferred from State Savings to the FSLIC or FDIC. In the absence of such evidence, Bledsoe claims that the FDIC cannot argue that the note was ever subject to the federal period of limitation. We reject Bledsoe's argument. The detailed factual description of the note's multiple transfers, as set forth in the FDIC's complaint and the FDIC's response to Bledsoe's motion for summary judgment, was never disputed by Bledsoe and is not now disputed by Bledsoe. On the contrary, Bledsoe's motion for summary judgment claimed that "there is no genuine issue as to any material fact necessary to establish that all of the causes of action asserted by the FDIC against [Bledsoe] are barred by the Texas statute of limitations." Furthermore, it is significant that Bledsoe raised no objections to the court below regarding the insufficiency of evidence.

The Juridical Journey

To discover the appropriate period of limitations applicable to the promissory note at issue we must retrace the note's institutional journey, determining along the way the impact of each of the various transfers on the period of limitations governing claims made pursuant to the note.

We begin our analytical journey on a clear and familiar road. On May 27, 1984, when the promissory note at issue matured in the hands of State Savings, and Galleon defaulted on its payment, State Savings' cause of action against Bledsoe accrued and was subject to Texas' four year statute of limitations. Tex.Civ.Prac. & Rem.Code 16.004(a)(3) (Vernon's 1986); *see Long Island Trust Co. v. Dicker,* 480 F.Supp. 656, 658 (N.D.Tex.1979) *reversed on other grounds,* 659 F.2d 641 (5th Cir.1981) ("the liability of a guarantor accrues on the date that the principal debt is due, the debtor having failed to pay").

Equally clear is that when the FSLIC was appointed receiver of State Savings on December 19, 1985, and the note transferred to the FSLIC, the FSLIC received the benefit of the federal six year statute of limitations under 28 U.S.C. § 2415(a).[3] The FSLIC's six year limitation period began to run when the cause of action accrued on May 27, 1984.[4]

When the promissory note is transferred from the FSLIC to Federal Savings on December 20, 1985, our journey reaches a critical juncture; and being unable to find a ready map in our judicial atlases we must come to a temporary halt. The issue we must resolve is whether the FSLIC's six year period of limitations under § 2415(a) was transferred to Federal Savings when the FSLIC assigned

---

Because Bledsoe made no objection below, and the relevant facts have been at all times undisputed, the district court did not err in treating the facts set forth in the FDIC's pleadings as stipulations. *See Munoz v. Intern. Alliance of Theatrical Stage Employees,* 563 F.2d 205, 214 (5th Cir.1977) ("uncontested statements of facts may sometimes be treated as stipulations").

[3]Section 2415(a) provides in relevant part:

> every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law of fact, shall be barred unless the complaint is filed within six years after the right of action accrues.

[4]As we recently clarified in *FDIC v. Belli,* 981 F.2d 838, 840-42 (5th Cir.1993), the FSLIC's cause of action accrues under § 2415(a) when the payor of the note defaults, and not, as the appellant argues, from the date that the FSLIC is appointed receiver.

its note to Federal Savings; or whether upon transfer to a private party the statute of limitations applicable to the note reverted to Texas' four year period. The necessity of engaging in judicial cartography and resolving this question is illustrated by briefly comparing the opposite destinations reached depending on the road we decide to travel.

If we decide that upon the transfer of the promissory note from the FSLIC to Federal Savings the note was subject to Texas' four year period of limitations, then our analytical trip would be short and simple. Texas' four year statute of limitations began running on May 27, 1984 (when Galleon defaulted) and expired on May 27, 1988. On May 27, 1988, under the Texas statute of limitations, any claim made pursuant to the promissory note at issue became stale in the hands of Federal Savings, and no subsequent transfer of the note could give the stale claim a second life.

It is well established that the subsequent transfer of a note to the government cannot revive a claim that is already stale. As the court in *FDIC v. Hinkson,* 848 F.2d 432, 434 (3rd Cir.1988), stated: "[i]f the state statute of limitations has expired before the government acquires a claim, it is not revived by transfer to a federal agency." The Supreme Court, in *Guaranty Trust Co. v. United States,* 304 U.S. 126, 142, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938), explained that the federal government is not unjustly deprived in such a circumstance because "the United States never acquired a right free from a pre-existing infirmity, the running of limitations against its assignor, which public policy does not forbid." *See also United States v. Nashville C. & S.L. Ry.,* 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81 (1886) (the United States cannot "maintain an action upon [a contract] if at that time all right of action of [the assignor] was extinguished, or was barred by the Statute of Limitations"); *FDIC v. Wheat,* 970 F.2d 124, 128 n. 7 (5th Cir.1992) ("Had the [state] limitations period expired [when the FDIC took over the bank], then the FDIC would have no rights"). Under this doctrine, the subsequent transfer of the promissory note from Federal Savings back to the FSLIC, on August 26, 1988, could not revive the already stale cause of action, and any suit filed by the FSLIC pursuant to the note would be time barred.

The same doctrine applies with equal force to bar the retroactive application of FIRREA to revive claims which have already become stale under state law. *See FDIC v. Belli,* 981 F.2d 838, 842

(5th Cir.1993) (section 1821(d)(14) "does not revive claims that had expired before August 9, 1989 ... In the absence of evidence of a contrary legislative purpose, subsequent extensions of a statutory limitation period will not revive a claim previously barred"); *FDIC v. McSweeney,* 976 F.2d 532, 534 (9th Cir.1992) ("The FDIC may not ... revive claims for which the state limitations period has expired before the date of federal receivership"). Thus, if we conclude that upon the note's transfer from the FSLIC to Federal Savings the Texas four year period of limitation became applicable to the note, we would be compelled to hold that the note became stale on May 27, 1988, and that the FDIC's subsequent action was time barred.

The opposite result is reached, however, if we decide that the federal six year period of limitations was transferred from the FSLIC to Federal Savings on December 20, 1985, the date FSLIC assigned the note to Federal Savings. Under § 2415(a)'s six year period of limitations, claims made pursuant to the unpaid note would be viable up through May 27, 1990. Hence, on August 26, 1988, when the note returned from Federal Savings to the FSLIC, and on August 9, 1989, the effective date of FIRREA, claims made pursuant to the note would be alive under § 2415(a). As we have held that FIRREA retroactively "applies to claims held by the FDIC that were alive on August 9, 1989," *Belli,* 981 F.2d at 842, FIRREA would retroactively apply to the note at issue.

As relevant to the analysis at hand, FIRREA maintained § 2415(a)'s six year period of limitations for claims brought by the FDIC,[5] but changed the date at which the period of limitations begins to run. While under the general statute of limitations set forth in § 2415(a) the six year period of limitations began to run upon the maturity of the note, under FIRREA's § 1821(d)(14)(B) "the date on which the statute of limitations begins to run ... shall be the later of (i) the date of the appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of action accrues." In the instant case, the later date is the date that the FSLIC was appointed receiver, December 19, 1985. As the six year period began running on December 19, 1985, the FDIC's claim filed on December 18, 1991, was filed one day before the expiration of the limitations period, and thus was timely filed.

---

[5]12 U.S.C. § 1821(d)(14)(A).

Given these opposing conclusions, the dispositive question before us is whether the six year period of limitations enjoyed by the FSLIC was transferred to Federal Savings upon the assignment of the note by the FSLIC to Federal Savings. Although we possess no pre-drawn map, our juridical compass, which is attuned to the judgments of federal district courts, the ancient voice of the common law, and to Congressional intent, clearly points towards the conclusion that the six year period of limitations transferred from the FSLIC to Federal Savings.

No Circuit has previously traversed this region of statutory wilderness, but the federal district courts that have reached this juncture have unanimously turned down the same road and reached the same destination. The Western District of Oklahoma, in *Mountain States Financial Resources Corporation v. Agrawal,* 777 F.Supp. 1550 (W.D.Okla.1991), relying on the common law principle that an assignee stands in the shoes of his assignor, held that the six year limitation period transferred to a private assignee of the FDIC. The Northern District of California, in *Fall v. Keasler,* 1991 WL 340182, 1991 U.S.Dist.Lexis 18771 (N.D.Cal.1991), followed the *Mountain States* court, holding that when the FDIC's assignee "took the assignment of the note he also took the benefit of the statute of limitations afforded the FDIC." The *Keasler* court reasoned that the same policy consideration which motivated federal courts to accord assignees of the FDIC "super" holder in due course status "compels giving the FDIC's assignees the benefit of the FIRREA statute of limitations." *See also North American Consultants v. Garlick Sales,* Civ-91-1066-C (W.D.Okla.1992) (following *Mountain States* ).[6]

Bledsoe maintains that the language of § 2415(a) and § 1821(d)(14) is plain and unambiguous, and that under this "plain" statutory language the FDIC and the FSLIC's six year period of limitations does not extend to private assignees. Section 1821(d)(14) explicitly accords a six year

---

[6]State courts examining this question have reached conflicting results. The Texas court of appeals in *Thweatt v. Jackson* 838 S.W.2d 725 (Tex.App. Austin, 1992), held that the assignee of the FDIC receives the benefit of the FDIC's six year limitations period. However, the Texas court of appeals in *Federal Debt Management v. Weatherly,* 842 S.W.2d 774 (Tex.App. Dallas, 1992), disagreed with the *Thweatt* court and held that § 1821(d)(14) applies *only* to actions brought by the FDIC, not its assignees. *See also Tivoli v. Tallman,* 1992 WL 301822, --- F.2d ---- (Colo.App.1992) (holding that the § 2415(a) six year limitations period does not extend to assignees of the FDIC).

period of limitations to actions brought by the FDIC as conservator or receiver, and § 2415(a) grants a six year period of limitations to claims brought by "the United States or an officer or an agency thereof." Assignees are not covered by the express terms of either statute. Given this statutory language, Bledsoe declares that "it is not a court's prerogative to add to an unambiguous statute."

While Bledsoe is certainly correct in stating that courts cannot amend or contravene the unambiguous dictates of Congress' statute, this truism is simply not applicable to the analysis at hand. The statutes are not "unambiguous" or "ambiguous" regarding the rights of assignees; rather, the statutes are absolutely silent on the matter. It is an axiomatic principle of statutory construction that in effectuating Congress' intent courts are to fill the inevitable statutory gaps by reference to the principles of the common law. As Justice Jackson eloquently explained in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 469-72, 62 S.Ct. 676, 685-86, 86 L.Ed. 956 (1942) (Jackson, J., concurring):

> The Federal courts have no *general* common law ... But that is not to say that wherever we have occasion to decide a Federal question which cannot be answered from Federal statutes alone we may not resort to all of the source materials of the common law ... Were we bereft of the common law, our Federal system would be impotent. This follows from the recognized futility of attempting all-complete statutory codes, and is apparent from the terms of the Constitution itself ... Federal common law implements the Federal Constitution and statutes, and is conditioned by them.

As the statute at hand is silent as to the rights of assignees, we turn to the common law to fill the gap. Fortunately, while the statute is quiet, the common law speaks in a loud and consistent voice: *An assignee stands in the shoes of his assignor.* Applying this principle to periods of limitations, the D.C.Circuit in *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros. Inc.* reasoned:

> since an assignee stands in the shoes of his assignor, deriving the same but no greater rights and remedies than the assignor then possessed (citation omitted), the statute of limitations continues to run against the assignee as it had against the assignor before. 452 F.2d 1346, 1357 n. 69 (1971).

*See also* 6 AM.JUR.2d *Assignments* § 102 (1963) ("defenses such as the statute of limitations ... may be interposed against the assignee if they were available against the assignor"); Restatement (Second) of Contracts § 336 comment b illustration 3 (1979) ("A lends money to B and assigns his right to C. C's right is barred by the Statute of Limitations when A's right would have been"); U.C.C. § 3-201(1) ("transfer of an instrument vests in the transferee such rights as the transferor has therein"). Applying this common law principle to the case at hand, Federal Savings, as the assignee, stood in the shoes

of the FSLIC, the assignor, and thus received the FSLIC's six year period of limitations.

Our conclusion that the federal six year statute of limitations transfers to private assignees is bolstered by the closely related line of cases by which we have extended the protection of the *D'Oench, Duhme* doctrine to private assignees of the FDIC and the FSLIC. Under *D'Oench, Duhme,* secret agreements cannot be raised as a defense against the government when it seeks to enforce a note. In *Porras v. Petroplex Sav. Assn.,* 903 F.2d 379 (5th Cir.1990), the FSLIC transferred its interest in a promissory note to a private assignee. The assignee sought to recover on the note and asserted that he is entitled to the same protection the FSLIC enjoys under the *D'Oench, Duhme* doctrine. We held that the *D'Oench, Duhme* protection transferred to the private assignee of the FSLIC, finding that "the policy behind *D'Oench, Duhme* applies with equal force where the purchaser is a private party." *Id.* at 381. We explained:

> A primary duty of the FDIC and the FSLIC is to pay depositors of failed financial institutions ... *D'Oench, Duhme* promotes purchase and assumption transactions by offering the purchaser protections from secret agreements that tend to affect adversely its rights in the instruments that it acquires. (citation omitted) Extending *D'Oench, Duhme* to transferees of assets from the FSLIC, therefore, provides the FSLIC with greater opportunity to protect the failed institutions' assets ... If appellants could successfully assert, as part of an affirmative claim or as a defense, an oral side agreement that tends to diminish the value of an otherwise facially valid instrument acquired by [the assignee], purchasers would be discouraged from acquiring assets from the FSLIC in the future, and the FSLIC would find it more difficult to protect the assets of failed institutions. *Id.* at 380-381.

*See also Bell & Murphy & Assoc., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 754 (5th Cir.1990) *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990) ("assignees of the FDIC also enjoy protection from claims or defenses based upon unrecorded side agreements").

We have similarly extended the status of a federal holder in due course to private assignees of the FDIC and the FSLIC. *See Federal Sav. and Loan Ins. Corp. v. Cribbs,* 918 F.2d 557, 559 (5th Cir.1990) ("the FDIC and subsequent note holders enjoy holder in due course status whether or not they satisfy the technical requirements of state law"); *Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244, 1249 (5th Cir.1990).

For the same reason that the extension of the *D'Oench, Duhme* doctrine and the federal holder in due course status to assignees of the FDIC and the FSLIC facilitates Congress' policy of protecting failed institutions' assets, the extension of the six year limitation period to assignees of the FDIC and

FSLIC would facilitate Congress' intent in enacting 28 U.S.C. § 2415(a) and 12 U.S.C. § 1821(d)(14):

> To hold that assignees are relegated to the state statute of limitations would serve only to shrink the private market for the assets of failed banks. It would require the FDIC to hold onto and prosecute all notes for which the state statute of limitations has expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the FDIC to rid the federal system of failed bank assets. *Fall v. Keasler,* 1991 WL 340182, 1991 U.S.Dist.Lexis 18771 (N.D.Cal.1991).[7]

The road is now clear again and our analytical journey can be summarily concluded. We hold that assignees of the FDIC and the FSLIC are entitled to the same six year period of limitations as the FDIC and the FSLIC. Transferring the federal six year statute of limitations from the FDIC and FSLIC to its assignees is consistent with the common law of assignments, furthers Congressional policy, and is supported by the cases extending the *D'Oench Duhme* doctrine to private assignees.

Thus, when the FSLIC was appointed receiver of State Savings and obtained the note on December 19, 1985, the FSLIC received the benefit of the six year limitation period under 28 U.S.C. § 2415(a), which began to run on May 17, 1984. Upon FSLIC's assignment of the note to Federal Savings on December 20, 1985, Federal Savings stood in the shoes of its assignor, and thus was subject to the same six year limitation period which would have expired on May 17, 1990. On August 26, 1988, when the note returned to the FSLIC all claims related to the note were still alive. On August 9, 1989, after the passage of FIRREA, the date at which the limitations period began to run changed to the date at which the FSLIC first became receiver, i.e., December 19, 1985.[8] With

---

[7]The extension of the *D'Oench, Duhme* protection to assignees of the FDIC is also relevant to Bledsoe's argument regarding the "plain language" of the statutes. The *D'Oench, Duhme* doctrine was codified by Congress in 12 U.S.C. § 1823(e). Significantly, like § 2415(a) and § 1821(d)(14), section 1823(e) addresses only the FDIC and not its assignees. Nevertheless, courts have interpreted the scope of § 1823(e) to include the FDIC's assignees. The Eighth Circuit in *FDIC v. Newhart,* 892 F.2d 47 (8th Cir.1989), explained that "one of the purposes behind § 1823(e) is to facilitate the purchase and assumption of failed banks as opposed to their liquidation." Holding that the statutory protections are transferred to the FDIC's assignee, the *Newhart* court reasoned that "a contrary result would emasculate the policy behind § 1823(e)" and have a "deleterious effect on the FDIC's ability to protect the assets of failed banks" because "the market for such notes would be smaller." *Id.* at 50.

[8]The appropriate date of receivership is December 19, 1985, the date of the first receivership, not August 26, 1988, the date of the second receivership. To prevent the possibility of an infinite period of limitations the FDIC cannot receive a *new* six year period every time it re-receives a note. Having received the benefit of the federal six year statute on a given note, the FDIC cannot

the six year limitation period beginning to run on December 19, 1985, the note would have become stale on December 19, 1991.  The FDIC's filing of this action on December 18, 1991 was one day prior to the expiration date and hence was timely.

Conclusion

For the foregoing reasons the judgment of the district court is REVERSED.

---

gain an additional six years by assigning the note to a private party and then receiving it again.