UMLIC–NINE CORPORATION, a North Carolina corporation, Plaintiff,

v.

LIPAN SPRINGS DEVELOPMENT CORPORATION, a Texas corporation; Richard S. Waring; Joseph T. Waring; Melinda P. Waring; the Waring Children's Irrevocable Trust; Karen Sheaffer, as Public Trustee of Eagle County, Colorado and All Occupants or other Unknown Persons Who Claim any Interest in the Subject Matter of this Action, Defendants.

No. CIV. A. 96–B–2495.

United States District Court, D. Colorado.

May 13, 1998.

Elizabeth A. Maldonado, Vaglica, Meinhold & Maldonado, LLC, Denver, CO, Max L. Lieberman, Lieberman & Stein, Blue Bell, PA, for UMLIC–Nine Corp.

Robert L. Sperberg, Joseph K.S. Ng, Sperberg & Associates LLC, Vail, BO, for Waring Children's Irrevocable Trust.

Joseph T. & Melinda P. Waring, Austin, TX, pro se.

Mary Joan Beranato, Eagle County Deputy Attorney, Eagle, CO, for Public Trustee Karen Sheaffer.

Richard S. Waring, Vail, CO, pro se.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this diversity action, plaintiff, UMLIC–Nine Corporation (UMLIC) moves for summary judgment seeking judgment *in rem* against property located in Eagle County Colorado in the principal amount of $250,000.00 plus interest, attorney's fees and costs, an order directing the U.S. Marshal to sell the property at public sale, and application of the proceeds to their judgment. Also pending is the cross-motion for summary judgment filed by defendant The Waring Children's Irrevocable Trust, in which *pro se* defendants Joseph T. Waring (J. Waring), Melinda Waring (M. Waring), and Richard S. Waring (R. Waring) join. Oral argument would not materially assist in the determination of the motions. After consideration of the motions and briefs, I will grant UMLIC's motion and deny defendants' cross-motion.

### I.

The following facts are undisputed. On June 20, 1986, defendant Lipan Springs executed and delivered a promissory note (Note) payable to Federated Savings and Loan Association · (FSL) in the original principal amount of $250,000.00. The same day, J. Waring, M. Waring, and R. Waring executed a deed of trust for the benefit of FSL as partial security for the Note. The deed of trust encumbers a Booth Falls Mountain Homes condominium unit in Vail, Colorado. The deed of trust was recorded in Book 446, Page 393, in the real property records of the Clerk and Recorder of Eagle County, Colorado. ·

Initially, the Note was due and payable on June 20, 1987. The term of the Note and deed of trust was extended and modified by written agreement executed effective June 20,1987, to be due on June 20, 1988. Defendant Lipan Springs defaulted on the Note and deed of trust, as modified and extended, when it failed to pay the amount of principal and interest due June 20, 1988. No payments have been made on the Note by the maker or any guarantor of the Note, or by any other person. On August 19, 1988, FSL was declared insolvent and the FDIC, acting

through the Federal Savings and Loan Deposit Insurance Corporation (FSLIC), was appointed receiver. The FSLIC then transferred FSL's assets to Sunbelt Savings, FSB (Old Sunbelt). Thereafter, Old Sunbelt failed and the FDIC, acting through the Resolution Trust Corporation (RTC), was appointed receiver on April 25, 1991. On the same day, the assets and liabilities of Old Sunbelt were transferred to Sunbelt Savings, FSB (New Sunbelt) and the RTC was appointed the conservator of New Sunbelt. On April 9, 1992, the RTC became the receiver for New Sunbelt. In 1995, the Note was acquired from the RTC by UMLIC's predecessor in title. On February 22, 1996, the Note and deed of trust was assigned to UMLIC. Pltf. Ex. Kechijian Aff. ¶ 9. UMLIC filed a motion for foreclosure in Eagle County District Court on March 22, 1996 which, upon UMLIC's motion, was dismissed without prejudice on December 16, 1996. This action was filed on October 25, 1996.

### II.

*Summary Judgment Standard*

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the op-

posing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir.1980); Fed. R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White* at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. Where, as here, the parties file cross motions for summary judgment, I assume that no evidence need be considered other than that filed by the parties. Nevertheless, summary judgment is inappropriate if disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 124 F.3d 1321, 1323 (10th Cir.1997).

## III.

### A. *Statute of limitations*

The first question is whether this action was filed in this court within the applicable federal statute of limitations contained in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821.

██ UMLIC argues that when Old Sunbelt failed on April 25, 1991 and the RTC was appointed its receiver the same day, the 6 year statute of limitations began running anew as of that date. Under this theory, an action on the Note is viable as long as it was filed by April 24, 1997. Defendants argue that FIRREA does not allow a new statute of limitations period each time a receiver or conservator it appointed.

In determining the scope of the FIRREA, the starting point is the language of the statute itself. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)(internal quotations and citation omitted). "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enter., Inc.*, 589 U.S. 235, 242 (1989)(internal quotations, brackets and citation omitted). I must also look to the provisions of the whole law, and to its object and policy. *Aulston v. United States*, 915 F.2d 584, 589 (10th Cir. 1990), *cert. denied*, 500 U.S. 916, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991).

The State of Colorado statute of limitations for contract actions is 6 years. Section 13–80–103.5(1)(a), C.R.S. In the State of Texas, the state in which the promissory note was executed, the statute of limitations for contract actions is 4 years. Tex.Civ.Prac. & Rem.Code 16.004(a)(3)(Vernon's 1986). Although not addressed directly, each party relies on the State of Texas' statute of limitations.

██ Default occurred on June 20, 1988, the maturity date on the Note. Therefore, neither states' statute of limitations had expired when the RTC acquired the Note on August 19, 1988. Pursuant to § 1821(d)(14)(B), the federal six year statute of limitations began to run on August 19, 1988. Therefore, if there were no further intervening occurrences, any action on the Note had to be filed before August 19, 1994. It is well settled that a private assignee of the FDIC/RTC is entitled to the benefit of the FIRREA statute of limitations if the loan

was in default and not barred by the state statute of limitations when the FDIC/RTC acquired the asset. *Cadle Company v. 1007 Joint Venture,* 82 F.3d 102, 105 (5th Cir. 1996); *Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244 (Colo.1994); *Jackson v. Thweatt,* 883 S.W.2d 171 (Tex.)., *cert. denied sub nom Weatherly v. Federal Debt Mgmt., Inc.,* 513 U.S. 872, 115 S.Ct. 196, 130 L.Ed.2d 127 (1994).

The FIRREA is silent on the effect of subsequent appointments of receivers and conservators on the statute of limitations. Therefore, an analysis of the plain meaning of the statutory language is futile. Also, research fails to reveal a court decision addressing whether § 1821(d)(14) allows stacking of the FIRREA statute of limitations as sought by UMLIC. Equally unavailing is the argument that if Congress intended to reset the statute of limitations each time a receiver or conservator was appointed it could have inserted into FIRREA the words "each time" or "every time." The opposite argument is equally plausible, however. If Congress intended the statute of limitations period to begin on the FDIC's initial appointment as receiver or conservator only, it could have inserted the word "initial."

Consequently, I turn to an examination of the statute as a whole and policy considerations to determine this issue.

█ In 1989, Congress enacted FIRREA in response to the "precarious financial condition of the nation's banks and savings and loan institutions." *Resolution Trust Corp. v. Love,* 36 F.3d 972 (10th Cir.1994) quoting *Henderson v. Bank of New England,* 986 F.2d 319, 320 (9th Cir.1993). FIRREA gives broad powers to the RTC "to deal expeditiously with failed financial institutions." *Id.*

The FIRREA statute of limitations provides:

A. In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be -

i. in the case of any contract claim, the longer of -

I. the 6-year period beginning on the date the claim accrues; or

II. the period applicable under State law; ...

B. Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of -

i. the date of the appointment of the Corporation as conservator or receiver; or

ii. the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14). However, the FIRREA limitation period only applies to a claim not barred by a state statute of limitations on the date the FDIC is appointed receiver or conservator for the financial institution holding the promissory note. *FDIC v. Regier Carr & Monroe,* 996 F.2d 222, 225 (10th Cir.1993).

Defendants contrast § 1821(d)(14)'s statute of limitations language concerning actions *"brought by the Corporation* as conservator or receiver" with the language in § 1821(e) that the *"conservator or receiver* for any insured depository institution may disaffirm or repudiate any contract...." Defendants argue that the use of the term "Corporation" in § 1821(d)(14) and the omission of "Corporation" from § 1821(e) mandates that the two sections be interpreted differently. They argue that Congress' use of the word "Corporation" in § 1821(d)(14) refers only to the FDIC, not to the RTC, which they assert is merely an umbrella organization exclusively managed by the FDIC. Based on this premise, defendants argue that the FDIC has a different status than the RTC when acting as a conservator or receiver. Under defendants' analysis, the emphasis of § 1821(d)(14) is on the FDIC operating through either the FSLIC or the RTC while § 1821(e)'s silence as to the "Corporation," makes its provisions available to any "conservator or receiver" appointed for any insured depository institution. Def. Brief, p. 7.

Defendants' argument ignores the gist of 12 U.S.C. § 1441a, enacted on the same day

as FIRREA. Section 1441a provides, in pertinent part, for the "[establishment of] a Corporation known as the Resolution Trust Corporation which shall be an instrumentality of the United States." *Id.* at § 1441a(b)(1)(A). Moreover, the RTC's operations are monitored and overseen by the Thrift Depositor Oversight Board, § 1441a(a)(22), not the FDIC, and is managed by its chief executive officer. § 1441a(b)(1)(C). Section 1441a(b)(1)(B) provides:

> [t]he Corporation [RTC], when it is acting as a conservator or receiver of an insured depository institution, shall be deemed to be an agency of the United States *to the same extent as the Federal Deposit Insurance Corporation when it is acting as a conservator or receiver of an insured depository institution.*

12 U.S.C. § 1441a(b)(1)(B)(emphasis added). Further, Section 1441a(b)(4)(A) states:

> [I]n addition to any other provisions of this section, *the Corporation [RTC] shall have the same powers and right to carry on its duties with respect to institutions described in paragraph 3(A), as the Federal Deposit Insurance Corporation has under sections 1821, 1822, and 1823.*

12 U.S.C. § 1441a(b)(4)(A)(emphasis added). For analytical purposes, therefore, there is no distinction between the RTC and the FDIC. Thus, the use of the word "Corporation" in the statutes encompasses the FDIC and the RTC.

■ The RTC in its corporate capacity is a discrete legal entity from RTC in either of its capacities as receiver or conservator. *Dababneh v. FDIC,* 971 F.2d 428, 431 (10th Cir.1992); *FDIC v. Bernstein,* 944 F.2d 101 (2d Cir.1991). Hence, courts interpreting § 1821(e) allow successive conservators or receivers a new right of repudiation of contracts. *See e.g., 1185 1185 Avenue of Americas Associates v. RTC,* 22 F.3d 494, 496–97 (2d Cir.1994)( under § 1821(e) the RTC, as newly appointed receiver, had a new reasonable period to repudiate a contract even though it had earlier been the conservator without repudiating the contract). *RTC v. CedarMinn Building Ltd. Partnership,* 956 F.2d 1446 (8th Cir.), *cert. denied sub nom. CedarMinn Building Ltd. Partnership v.*

*RTC,* 506 U.S. 830, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992) addressed the timeliness of the RTC's repudiation of leases under § 1821(e). In discussing the independent repudiation rights of the RTC as conservator and as receiver the Court stated:

> In [§§ 1821(e)(1) and (2) ], Congress repeats the dual treatment of "conservator or receiver" seven times. Nowhere in the language of the statute is it stated or implied that the appointment of the RTC as a conservator negates powers RTC would enjoy if it were later appointed a receiver of the same institution. Had Congress intended RTC's status as a conservator or receiver to be mere artifice, it would have granted all duties, rights, and powers to the Corporation.

*CedarMinn,* 956 F.2d at 1450. The Court further explained:

> Throughout FIRREA, Congress specifically articulated when the Corporation was to exercise a duty, right, or power in its capacity as a "conservator or receiver." In each instance it is clear that Congress intended the duty, right, or power to be enjoyed or exercised by both the conservator and the receiver. *It stretches credibility to assume Congress intended any of these rights to be forfeited in instances when the Corporation preceded itself as conservator or receiver of an institution.* More instructive, however, is the care Congress took to delineate those duties, rights, and powers the Corporation could pursue only in its capacity as receiver, or only in its capacity as conservator, but not both.

*Id.* at 1451–52 (emphasis added). In a footnote, the Court listed all of the duties, rights, and powers that FIRREA grants to both the receiver and the conservator, including the enlargement of the statute of limitations found in § 1821(d)(14).

Also significant is the fact that Congress granted the RTC all of the receivership and conservatorship powers it granted the FDIC pursuant to 12 U.S.C. § 1441a(b)(4). Therefore, the use of the term "Corporation" refers both to the FDIC and the RTC exercising these parallel powers. Thus, the § 1821(e) cases allowing successive statutes of limitations upon appointment of subse-

quent receivers or conservators are applicable, by analogy, to this case.

■ Defendants rely on *FDIC v. Bledsoe,* 989 F.2d 805 (5th Cir.1993) and *Legal Econometrics, Inc. v. Chama Land & Cattle Co., Inc.,* 169 B.R. 876, 885 (Bankr.N.D.Tex.1994) in support of their position that the FIRREA statute of limitations begins to run as of the appointment of the first receiver or conservator and does not start over every time a new receiver or conservator is appointed.

In *Bledsoe,* the sole issue before the Court was whether the six-year statute of limitations was transferable to a private assignee of the FDIC. The Court stated in a footnote that:

> "[t]o prevent the possibility of an infinite period of limitations the FDIC cannot receive a new six year period every time it re-receives a note. Having received the benefit of the federal six year statute on a given note, the FDIC cannot gain an additional six years by assigning the note to a private party and then receiving it again."

*Bledsoe,* 989 F.2d at 812. However, this statement was dictum as this issue was not before the Court and not necessary to its holding that the benefit of the federal statute of limitations was transferable to the FDIC's private assignee. Moreover, the case was decided under 28 U.S.C. § 2415, the general federal statute of limitations provision in effect before FIRREA's was enacted.

*Legal Econometrics,* a bankruptcy court decision, merely recites the *Bledsoe* dictum without analysis. Also, in *Legal Econometrics,* the FDIC acquired the loan at issue by purchase, not by appointment as receiver or conservator. Thus, unlike the RTC in this case, the FDIC was an assignee which stood in the shoes of its assignor.

■ The separate capacities of receiver and conservator buttresses UMLIC's assertion that successive appointments starts anew the statute of limitations period. In their capacity as conservator, the FDIC or the RTC must marshal a failed institution's assets and attempt to restore it to an ongoing concern. *See CedarMinn,* 956 F.2d at 1454. Receivers, on the other hand, are empowered to liquidate and wind up the af-

fairs of an institution. H.R.Conf.Rep. No. 101–209, 101st Cong., 1st Sess. 398 (1989). Consistent with these different roles, the value of an asset to the FDIC or RTC might vary significantly depending on whether either entity is in the role of receiver or conservator. In light of the dichotomy of purpose of the two roles, there is support for concluding that successive appointments as receiver or conservator results in a new six year statute of limitations.

Defendants also argue that the public policy against stale claims weighs in favor of concluding that there is no "stacking" of statute of limitations periods. UMLIC contends that the countervailing policy of ensuring stability of the nation's financial institutions outweighs the policy against stale claims.

Under the FDIC Act, the FDIC's sole purpose is to promote the stability of the banking system. *FDIC v. Isham,* 782 F.Supp. 524, 531 (D.Colo.1992). Consequently, the FDIC's regulatory oversight of banks is intended to protect depositors, the insurance fund, and the public. *Id.* Likewise, in its receiver role, the FDIC undertakes actions only to fulfill its mandate to stabilize the banking system by protecting depositors and creditors of the failed bank and the public generally. *Id.* The "overarching statutory mandate" to the FDIC is to minimize loss to the insurance fund. *FDIC v. Bank of Boulder,* 911 F.2d 1466, 1474 (10th Cir.1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991). "FIRREA's guiding light must be to further the goal of preserving and strengthening the nation's banking system and the fund insuring bank deposits." *RTC v. Heiserman,* 839 F.Supp. 1457, 1468 (D.Colo.1993). Indeed, speaking specifically about the FIRREA statute of limitations, the bill's sponsor stated:

> [t]he provisions should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law, claims that would otherwise have been lost due to the expiration of the applicable limitations periods.

135 Cong.Rec. S10205 (Aug. 4, 1989).

Concluding that the statute of limitations is reset each time the FDIC or RTC is

appointed as receiver or conservator advances this overriding goal. After consideration of the legislative history of 12 U.S.C. §§ 1821(d)(14) and (e), policy considerations, and absent pertinent case law addressing the FIRREA statute of limitations, I conclude that this action was filed within the applicable statute of limitations.

### B. *Alleged release agreement*

█ In their papers, defendants imply that there exists an agreement whereby the Colorado deed of trust would be released upon payment of less than the full amount due under the Note. Assuming for purposes of analysis that this issue is properly before me, this defense is barred by 12 U.S.C. § 1823(e), which codified the D'Oench doctrine. This doctrine provides that no agreement which tends to diminish or defeat the interest of the FDIC in a promissory note, shall be valid unless:

A) the agreement is in writing;

B) the writing was executed contemporaneously with the Note;

C) the written agreement was approved by the bank's board of directors or loan committee, and approval is reflected in the bank's records; and

D) the written agreement has been continuously maintained as an official record of the bank.

*D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

In this case, it is uncontested that the promissory note is unpaid. There is no evidence of intent to release the defendants or otherwise forgive the indebtedness. Thus, as a matter of law, defendants' contention that the deed of trust was intended to secure only $10,000 against the Vail property is without merit.

It is undisputed that the Note was not paid on June 20, 1988, the extended maturity date, and that no payment has ever been made by any person. Having decided that the plaintiffs' claim is not barred by the FIRREA statute of limitations, UMLIC is entitled to summary judgment. Accordingly, IT IS ORDERED that:

1. plaintiff's motion for summary judgment is GRANTED;

2. defendants' cross-motion for summary judgment is DENIED;

3. judgment IN REM shall enter for plaintiff UMLIC–Nine Corporation in the principal amount of $250,000.00 and interest accruing at the rate of 11.0% from June 21, 1986 through June 20, 1988 and thereafter at the rate of 18% to the date of judgment, plus 5% of any and all installments due and owing and not paid within fifteen (15) days after the date the same was due, on the real property in Eagle County, Colorado described as:

> BEING Unit 17, BOOTH FALLS MOUNTAIN HOMES, according to the map thereof of record and according to the Condominium Declaration for BOOTH FALLS MOUNTAIN HOMES, recorded February 26, 1974, in Book 233 at Page 550 and as amended by instrument recorded April 8, 1974, in Book 234 at Page 124, subject to the provisions, conditions and obligations as contained in said Condominium Declaration and Amendment;

and encumbered by the Deed of Trust recorded in Book 446, Page 393 in the real property records of the Clerk and Recorder of Eagle County, Colorado;

4. plaintiff's Deed of Trust is determined to be a prior and superior lien to the interest of any of the defendants on the property;

5. the U.S. Marshal is DIRECTED TO SELL the above described property at public sale and APPLY the proceeds thereof to plaintiff's judgment; and

6. upon filing of a bill of costs and attorney's fees documentation within 10 days from the date of this Order, plaintiff is granted its costs and attorney's fees.