# UNITED STATES COURT OF APPEALS
## Tenth Circuit
## Byron White United States Courthouse
## 1823 Stout Street
## Denver, Colorado 80294
## (303) 844-3157

Patrick J. Fisher, Jr.
Clerk

Elisabeth A. Shumaker
Chief Deputy Clerk

March 24, 1999

**TO:** ALL RECIPIENTS OF THE OPINION

**RE:** 98-1193, 98-1228   *UMLIC-NINE Corp. v. Waring*
Filed on February 16, 1999

The court's slip opinion filed in this case contains a typographical error on page 12, first sentence of the first full paragraph. The sentence should read as follows:

We conclude that the congressional intent is best served by resetting the statute of limitations on the Note at the point when the RTC became receiver for Old Sunbelt, even though the FDIC previously held the Note as receiver for Federated.

A copy of the corrected page 12 is attached for your convenience.

Sincerely,
Patrick Fisher, Clerk of Court


Keith Nelson
Deputy Clerk


encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 16 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UMLIC-NINE CORPORATION,
a North Carolina corporation,

       Plaintiff-Appellee,

v.

LIPAN SPRINGS DEVELOPMENT
CORPORATION, a Texas
corporation; RICHARD S. WARING;
WARING CHILDREN'S
IRREVOCABLE TRUST; KAREN
SHEAFFER, as public trustee of
Eagle County, Colorado, and all
occupants or other unknown persons
who claim any interest in the subject
matter of this action,

       Defendants,

   and

JOSEPH T. WARING;
MELINDA P. WARING,

       Defendants-Appellants.

Nos. 98-1193 & 98-1228

---

UMLIC-NINE CORPORATION,
a North Carolina corporation,

       Plaintiff-Appellee,

v.

LIPAN SPRINGS DEVELOPMENT
CORPORATION, a Texas
corporation; JOSEPH T. WARING;
MELINDA P. WARING; WARING
CHILDREN'S IRREVOCABLE
TRUST; KAREN SHEAFFER, as
public trustee of Eagle County,
Colorado, and all occupants or other
unknown persons who claim any
interest in the subject matter of this
action,

     Defendants,

  and

RICHARD S. WARING,

     Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-B-2495)

Submitted on the briefs:

Don H. Meinhold of Vaglica & Meinhold, L.L.C., Colorado Springs, Colorado, and Max L. Lieberman of Max L. Lieberman & Associates, Fort Washington, Pennsylvania, for Plaintiff-Appellee.

Joseph T. Waring, Melinda P. Waring, and Richard S. Waring, pro se.

Before **TACHA** , **BARRETT** , and **MURPHY** , Circuit Judges.

**BARRETT** , Circuit Judge.

Defendants-appellants Joseph T. Waring, Melinda P. Waring, and Richard S. Waring appeal from the district court's order granting summary judgment to plaintiff-appellee UMLIC-Nine Corporation (UMLIC) on UMLIC's complaint for judgment in rem against property located in Eagle County, Colorado.  See UMLIC-Nine Corp. v. Lipan Springs Dev. Corp. , 5 F. Supp. 2d 1152 (D. Colo. 1998) (order granting summary judgment).  We affirm. [1]

The following facts are undisputed.  On June 20, 1986, Lipan Springs Development Corporation (Lipan Springs), a Texas corporation, executed and delivered a promissory note (Note) payable to Federated Savings and Loan Association (Federated) in the original principal amount of $250,000.  As partial security for the Note, appellants executed a deed of trust encumbering a condominium unit located in the Booth Falls Mountain Homes condominium development in Eagle County, Colorado (Colorado property).  Lipan Springs

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The cases are therefore ordered submitted without oral argument.

-3-

further secured the note by executing a deed of trust encumbering a property in Travis County, Texas (Texas property).

Initially, the Note was to become due and payable in full on June 20, 1987. By written agreement executed effective June 20, 1987, the term of the Note was extended to June 20, 1988, with all remaining principal and interest due on that date. Lipan Springs defaulted on the Note and deed of trust, as extended, by failing to pay the principal and interest due June 20, 1988. The Note remains unpaid.

On August 19, 1988, the Federal Home Loan Bank Board (FHLBB) declared Federated, the obligee on the Note, insolvent. The FHLBB appointed the Federal Deposit Insurance Corporation (FDIC), acting through the Federal Savings and Loan Deposit Insurance Corporation (FSLIC), receiver for Federated. Acting as receiver, the FSLIC then transferred Federated's assets, including the Note, to Sunbelt Savings, FSB (Old Sunbelt).

Old Sunbelt subsequently failed. On April 25, 1991, the director of the Office of Thrift Supervision (OTS) appointed the FDIC, acting through the Resolution Trust Corporation (RTC), receiver for Old Sunbelt. On the same date, the OTS chartered a new institution, Sunbelt Savings, FSB (New Sunbelt); transferred to it all of Old Sunbelt's assets, including the Note; and appointed the

-4-

RTC conservator for New Sunbelt. On April 9, 1992, the OTS replaced the RTC as conservator for New Sunbelt by appointing RTC receiver for New Sunbelt.

In 1995, UMLIC's predecessor in title acquired the Note from RTC. The Note and the deeds of trust were assigned to UMLIC on February 22, 1996. UMLIC filed this action on October 25, 1996. The district court granted summary judgment for UMLIC on its complaint, rejecting appellants' argument that this action is barred by the statute of limitations.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, applying the same standard as it applied. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). This standard requires us to examine the record in order to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the district court correctly applied the substantive law. See id. In doing so we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. See id. Where the nonmovant will bear the burden of proof at trial on a dispositive issue, however, that party must go beyond the pleadings and designate specific facts so as to make a

showing sufficient to establish the existence, as a triable issue, of an element essential to that party's case in order to survive summary judgment. See id.

## I.

Appellants first argue that this action is barred by the federal statue of limitations applicable to actions brought by FDIC or RTC [2] as conservator or receiver, established by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). See 12 U.S.C. § 1821(d)(14). That statute reads in pertinent part as follows:

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be–

(I) in the case of any contract claim, the longer of–

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law[.]

. . .

(B) Determination of the date on which a claim accrues

---

[2] The statute refers to the FDIC (the "Corporation"); however, it is also applicable to the RTC. "Congress gave the RTC all of the receivership and conservatorship powers it granted the FDIC." RTC v. CedarMinn Bldg. Ltd. Partnership, 956 F.2d 1446, 1450 n.5 (8th Cir. 1992).

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of–

(I) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

The Fifth Circuit has adopted a two-step analysis to be used in determining whether this statute bars an action by the RTC. See FDIC v. Barton, 96 F.3d 128, 132 (5th Cir. 1996). This analysis is consistent with our cases, see FDIC v. Regier Carr & Monroe, 996 F.2d 222, 225 (10th Cir. 1993), and we will apply it here. Under this analysis, we ask first whether the claims brought by RTC or its assignee [3] were viable under the state limitations statute at the time the RTC became receiver. See Barton, 96 F.3d at 132. The four-year Texas statute of limitations [4] did not expire until June 1992 and was therefore still running when the FDIC or RTC became receiver for each of the institutions involved here. See

---

[3]    As a private assignee of an obligation in default from the RTC, UMLIC stepped into its shoes and received the benefit of the six-year FIRREA statute of limitations. See Cadle Co. v. 1007 Joint Venture, 82 F.3d 102, 105 (5th Cir. 1996).

[4]    The parties have proceeded as though the note were governed by the Texas statute of limitations. As the district court noted, the Colorado statute of limitations also had not yet run at the time RTC was appointed receiver for Old Sunbelt. See Colo. Rev. Stat. § 13-80-103.5(1)(a). The choice of law issue is therefore immaterial to the outcome of this case.

Tex. Civ. Prac. & Rem. Code § 16.004(a)(3) (West 1986). Thus, regardless of which receivership applies, UMLIC has met the first criterion for timeliness.

We next ask whether FIRREA's six-year statute of limitations has run. See Barton, 96 F.3d at 132. Appellants contend that it began running no later than August 19, 1988, the date the FDIC was appointed receiver for Federated, and therefore expired in August 1994. The district court concluded, however, based upon its analysis of the statute, that the limitations period was reset when the RTC became receiver for Old Sunbelt and that the six-year statute therefore did not begin to run until at least April 25, 1991. See UMLIC-Nine, 5 F. Supp. 2d at 1158-59.

We review the district court's analysis of the statute de novo. See Dalton v. IRS, 77 F.3d 1297, 1299 (10th Cir. 1996). "When interpreting a statute, we first examine the statutory language itself. If unambiguous statutory language is not defined, we give the language its common meaning, provided that the result is not absurd or contrary to the legislative purpose." Id. (citations omitted).

Section 1821(d) contains no language specifying whether a subsequent appointment resets the limitations period. Appellants draw our attention to dicta in FDIC v. Bledsoe, 989 F.2d 805 (5th Cir. 1993), subsequently cited in Legal Econometrics, Inc. v. Chama Land & Cattle Co. (In re Legal Econometrics, Inc.), 169 B.R. 876, 885 (Bankr. N.D. Tex. 1994), to support their position that stacking

of the FIRREA statute of limitations as sought by UMLIC is prohibited. We do not find these cases persuasive.

In Bledsoe, the principal issue was whether the assignee of a note from the FDIC was entitled to assert FIRREA's six-year statute of limitations. In that case, the FSLIC obtained a note on December 19, 1985, when it was appointed receiver of an insolvent institution. The FSLIC assigned the note to a savings and loan which subsequently failed, and the note returned to the FSLIC on August 26, 1988. The Fifth Circuit held that the FDIC timely filed its complaint on the note on December 18, 1991, within the limitations period. In a footnote, the court further stated the following:

> The appropriate date of receivership is December 19, 1985, the date of the first receivership, not August 26, 1988, the date of the second receivership. To prevent the possibility of an infinite period of limitations the FDIC cannot receive a *new* six year period every time it re-receives a note. Having received the benefit of the federal six year statute on a given note, the FDIC cannot gain an additional six years by assigning the note to a private party and then receiving it again.

Bledsoe, 989 F.2d at 811 n.8.

This statement from Bledsoe is dicta. See Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1184 (10th Cir. 1995) ("Dicta are 'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.'") (quoting Black's Law Dictionary 454 (6th ed. 1990)). The dicta is unsupported by citation to relevant

authority or statutory analysis. We do not find it persuasive. In Legal
Econometrics, the bankruptcy court relied on the Bledsoe dicta, without
independent analysis. See 169 B.R. at 885.

Other than these two cases, which we find unpersuasive, we have located
no case law which directly addresses the issue here. We move on, therefore, to
consideration of the purpose and scope of FIRREA's statute of limitations and the
legislative intent revealed in its statutory history. See State Ins. Fund v. Southern
Star Foods, Inc. (In re Southern Star Foods, Inc.), 144 F.3d 712, 715 (10th Cir.),
cert. denied, 119 S. Ct. 438 (1998).

Congress enacted FIRREA in response to the "precarious financial
condition of the nation's banks and savings and loan institutions." RTC v. Love,
36 F.3d 972, 975 (10th Cir. 1994) (quoting Henderson v. Bank of New England,
986 F.2d 319, 320 (9th Cir. 1993)). FIRREA grants broad powers to the RTC "to
deal expeditiously with failed financial institutions." Id. The FDIC, and
consequently the RTC, is empowered to merge insolvent institutions into other
insured institutions; to transfer the assets and liabilities of insolvent institutions to
other institutions; and, with approval of the OTS, to organize new institutions to
take over assets and liabilities of insolvent institutions. See § 1821(d)(2)(F), (G).

Senator Donald Riegle, the sponsor of FIRREA, stated that its statute of
limitations provisions "should be construed to maximize potential recoveries by

the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Sen. Riegle). In interpreting a statute, we accord substantial weight to statements by its sponsors concerning its purpose and scope. See Federal Energy Admin. v. Algonquin SNG, Inc., 426 U.S. 548, 564 (1976).

The legislative history and purpose of FIRREA both weigh in favor of granting the RTC the benefit of a reset statute of limitations. Appellants argue, however, echoing the Bledsoe dicta, that resetting the statute of limitations would allow the RTC to receive an infinite number of six-year limitations periods by successively assigning notes to one insolvent institution after another. They contend this runs afoul of the purposes of statutes of limitation, which are to insure finality and to prevent the assertion of stale claims. See Jobin v. Boryla (In re M & L Bus. Mach. Co., 75 F.3d 586, 590 (10th Cir. 1996).

We decide here only that the statute of limitations may be reset if a subsequent receivership occurs while the state statute of limitations continues to run. We express no opinion concerning the effect of a subsequent receivership outside the state statute of limitations period, and leave that question for another day. Since our holding is delimited in this fashion, the theoretical problem

appellants raise concerning "infinite" extensions of the statute of limitations is inapplicable.

We conclude that the congressional intent is best served by resetting the statute of limitations on the Note at the point when the RTC became receiver for Old Sunbelt, even though the FDIC previously held the Note as receiver for Federated. The statute of limitations under § 1821(d)(14) therefore recommenced on April 25, 1991, and this action was timely. [5]

II.

Appellants next argue that an agreement exists whereby the deed of trust on the Colorado property would be released upon payment of only $10,000. They have failed to supply evidence of the alleged agreement sufficient to satisfy the requirements of the D'Oench, Duhme doctrine. [6] See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942). That doctrine, now codified at 12 U.S.C. § 1823(e), provides that no agreement which tends to diminish or defeat the interest of the

---

[5] There is also an argument that the statute of limitations was reset when RTC became receiver for New Sunbelt on April 9, 1992; however, as the action was timely based on the receivership of Old Sunbelt, we need not decide that question.

[6] Two settlement statements prepared in connection with this transaction do appear in the record. The first reflects a loan amount of $10,000 and identifies the Colorado property as the hypothecated property. The second reflects a loan amount of $240,000 and identifies the Texas property as the hypothecated property. These statements do not satisfy the requirements of D'Oench, Duhme.

-12-

FDIC in a promissory note shall be valid unless (1) the agreement is in writing; (2) the writing was executed contemporaneously with the note; (3) the written agreement was approved by the bank's board of directors or loan committee, and that approval is reflected in the bank's records; and (4) the written agreement has been continuously maintained as an official record of the bank. D'Oench, Duhme applies to actions brought by FDIC's assignees as well as by FDIC itself. See National Enters., Inc. v. Smith, 114 F.3d 561, 564 (6th Cir. 1997). Since appellants failed to provide evidence of the alleged agreement sufficient to satisfy D'Oench, Duhme, the district court properly granted summary judgment for UMLIC on this defense.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.